UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

STANLEY K. IVEY,
    Petitioner,

vs

WARDEN, HOCKING
CORRECTIONAL FACILITY,
    Respondent.

Case No. 1:13-cv-914

Black, J.
Litkovitz, M.J.

**REPORT AND RECOMMENDATION**

Petitioner, an inmate in state custody at the Hocking Correctional Facility in Nelsonville, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). This matter is before the Court on respondent's motion filed May 27, 2014 requesting that the petition be dismissed without prejudice as a mixed petition containing both exhausted and unexhausted claims. (Doc. 13). Petitioner has not opposed the motion to dismiss.

## I. PROCEDURAL BACKGROUND

### State Trial Proceeding

In October 2010, the Hamilton County, Ohio, grand jury returned an indictment charging petitioner with one count of inducing panic in violation of Ohio Rev. Code § 2917.31(A)(3); one count of involuntary manslaughter in violation of Ohio Rev. Code § 2903.04(A); and one count of aggravated vehicular homicide in violation of Ohio Rev. Code § 2903.06(A)(2)(a). (*See* Doc. 13, Ex. 1). The charges stemmed from a car crash that occurred on October 4, 2010, which resulted in the death of James Lester. (*See id.*).

Petitioner was referred to the Court Clinic Forensic Services for "mental examination" after his counsel filed a "Suggestion of Incompetence" and a "Plea of Not Guilty by Reason of Insanity" on his behalf. (*See id.*, Exs. 7-9). Upon consideration of the examining physician's evaluation of petitioner's mental condition, the trial court issued an entry on September 28, 2011,

finding petitioner "to be competent for the purpose of standing trial." (*Id.*). At a hearing held the same date, the trial court also ruled that petitioner failed to "meet the criteria for the plea of insanity" after the parties stipulated to findings contained in the physician's report that petitioner was competent to stand trial and failed to satisfy "the criteria for the not guilty by reason of insanity defense." (*See id.*, Trial Tr. 2, 5). In stipulating to both of the physician's findings, defense counsel explained:

> It's an excellent report prepared very professionally. It is very detailed, and it has covered all of the relevant issues that we've brought to the Court's attention, the prosecution's attention and, frankly, to the doctor's attention.
>
> I've explained to [the defendant] that the doctors concur that he has a severe liver disease. They concur when he was in the hospital, he was in a hepatic and encephalopathy state, and that it is most likely that he was in that state when he was operating the motor vehicle.
>
> They're unable, however, to say to a reasonable degree of medical certainty, that it either rises to the level of a plea of not guilty by reason of insanity, or that it rises to the level of some incapacitation argument to a jury.
>
> Frankly, . . . I have talked to numerous experts beyond the witnesses that have been interviewed by the Court clinic, all of whom I talked to also, but I've talked to numerous other physicians and done research myself, and I've explained to my client.
>
> I'm satisfied that there is no way to correlate ammonia levels or hepatic encephalopathy initiated confusion, or even hepatic states to specific features. It can only be diagnosed and determined in realtime.
>
> So there are no doctors that are in a position to testify to a reasonable degree of medical certainty what his condition was at the moment that he was operating this motor vehicle.
>
> I believe there's ample circumstantial evidence that he was suffering, but whether it would actually rise to the level of a defense is – it's not confident it has not risen to the level of defense.

(*Id.*, Trial Tr. 3-4).

Following the court's rulings regarding petitioner's competency and insanity defense,

2

petitioner next waived his right to a jury trial and entered a guilty plea to the charges of inducing panic and involuntary manslaughter. (*See id.*, Exs. 10, 11). At the plea hearing, which was also held on September 28, 2011, the prosecutor proffered the following statement of facts prior to petitioner's entry of his guilty pleas:

> Basically, . . . the defendant was driving his Mustang, it turns out to be approximately 154 miles an hour for moments before he struck Mr. Lester's vehicle.
>
> Mr. Lester's vehicle was crushed to nearly one half of its original length. The car burst into flames with Mr. Lester inside.
>
> The defendant's car was equipped with a super charger and intercooler that was not the original equipment that allowed the car to go significantly faster than if he would have bought it off the lot.
>
> The defendant is from northeastern Ohio. . . . He was driving to Nashville, Tennessee. Apparently, he's a song writer, was going there for some music.
>
> He was driving down I-71 at around the 40-mile marker, 911 started getting calls from various drivers that, basically, they were going 75 miles an hour, and this Mustang was passing them like they were standing still.
>
> He was using all of the legal lanes, but also the left and right berms to get around traffic because it was around noon time on a work day.
>
> And based on that, a trooper tried to intercept him right around the mile marker 24, which is the Western Row exit right before Kings Island.
>
> The trooper saw Mr. Ivey coming down – he was southbound, the trooper was going northbound. Before the trooper could get around that emergency median, Mr. Ivey passed him, and by the time the trooper was able to turn around, though, the trooper was going around 130 miles an hour – Mr. Ivey was already passed him. In fact, the trooper never saw – Mr. Ivey's car was so far ahead that the trooper drove down I-71, by the time he got to mile marker 14, which was just south of Ronald Reagan Highway, the Ivey vehicle had struck Mr. Lester's car.
>
> Mr. Lester worked at Shriner's. His car became disabled. He was going to work. He pulled into that emergency lane and was waiting for help, and then by the time – again Sergeant Scales got to the scene, the Century that Mr. Lester was in was already struck.
>
> Mr. Lester was dead, he was left in his burning car. The interstate was closed for

hours as a result of the incident.

(*Id.*, Trial Tr. 7-9).

Petitioner's sentencing hearing was held a month later, on October 31, 2011. (*Id.*, Trial Tr. 25). At that hearing, defense counsel asked the trial court to consider in determining petitioner's sentence that when Lester was killed, petitioner was operating his motor vehicle while in a "hepatic encephalopathy state," with "extremely elevated ammonia levels" that "put him in an extremely confused state" and rendered him unable to "properly process information." (*See id.*, Trial Tr. 27-30). The court found, however, that petitioner's medical condition did "not excuse the fact that he 'got behind the wheel of his car' knowing [his] medical condition [and] the situations [he] had been in with that medical condition." (*Id.*, Trial Tr. 49). The court proceeded to sentence petitioner to concurrent prison terms of eighteen months for inducing panic and eight years for involuntary manslaughter with credit for time served. (*Id.*, Trial Tr. 50). On November 10, 2011, the court dismissed the aggravated vehicular homicide charge, and on November 21, 2011, issued the final judgment entry of conviction and sentence. (*Id.*, Exs. 13-14).

## State Appeal Proceedings

Petitioner filed an untimely *pro se* notice of appeal to the Ohio Court of Appeals, First Appellate District. (Doc. 13, Ex. 15). However, with the assistance of new counsel for appeal purposes, petitioner filed another notice of appeal and motion for delayed appeal to the Ohio Court of Appeals, First Appellate District. (*Id.*, Ex. 16). The Ohio Court of Appeals granted the motion for delayed appeal. (*See id.*, Ex. 17). In the brief that was subsequently filed by counsel on petitioner's behalf, petitioner presented the following claim as the sole assignment of error: "The trial court erred in sentencing the defendant contrary to law." (*Id.*, Ex. 18). On January 16,

4

2013, the Ohio Court of Appeals overruled the assignment of error and affirmed the trial court's judgment. (*Id.*, Ex. 20).

Petitioner next pursued a timely *pro se* appeal to the Ohio Supreme Court. (*Id.*, Ex. 21). In his memorandum in support of jurisdiction, petitioner asserted as the sole proposition of law that "[a] trial court must take into account mitigating circumstances of an offender's medical condition and the contributions made by that condition to the offense when rendering a sentence." (*See id.*, Ex. 22). On May 8, 2013, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (*Id.*, Ex. 24).

## Federal Habeas Corpus Petition

Petitioner commenced the instant federal habeas corpus action in December 2013. (*See* Doc. 1). In the petition, petitioner asserts the following grounds for relief:

> **Ground One:** Due to a disease, which the Court was acutely aware of, I was rendered involuntarily incapable of operating the automobile I was driving. The Court imposed a[n] 8 year, potential death sentence, after it was clearly stated on the record of trial "if he does not have a transplant in 5 years, it may result in his death." The Ohio Department of Rehabilitation and Correction has stated a liver transplant is expensive to perform on me. I am a 100% disabled veteran and entitled to receive a transplant at any capable Veterans hospital. The loss of control resulted in the accident, which unfortunately took the life of a Mr. James Lester. It was an accident, like thousands of others, precipitated by a medical condition called hepatic encephalopathy. I am a first time offende[r] who was legally operating the vehicle, and was not under the influence of alcohol or illegal drugs. Because of sensational media publicity and remorseful addresses by Mr. Lester's family members, the Court imposed cruel and unusual punishment on me.
>
> **Ground Two:** A[n] initial bail of $50,000.00 was imposed by the Court. Afterwards another bail in the amount of $50,000.00 was imposed. The second bail was excessive and there was never a violation of the bail by the defendant.
>
> **Ground Three:** My attorney, Mr. Scott R. Croswell, III failed to file a motion for appointment of any medical experts regarding my medical condition. He also failed to inform me of extensive media publicity and the negative impact, it and the statements of the victim's family members, would cause. Finally he failed in providing adequate legal advice concerning the terms agreed to in the plea

bargain.

(*Id.*, PAGEID #: 16). Petitioner acknowledges in the petition that the claims alleged in Grounds Two and Three were not presented as grounds for relief in the state appeal proceedings. (*Id.*, PAGEID #: 12).

Respondent has responded to the petition by filing a motion to dismiss. (Doc. 13). Respondent asserts that the petition is a "mixed" petition containing both exhausted and unexhausted claims for relief. (*Id.*, p. 8). Respondent specifically points out that petitioner's "third ground for relief involving allegations of ineffective assistance of trial counsel was not presented to the state courts." (*Id.*). Respondent contends that the mixed petition is subject to dismissal on exhaustion grounds because petitioner "has the remedy of a state post-conviction petition pursuant to Ohio Rev. Code § 2953.21(A) available to him" to the extent that his ineffective-assistance-of-counsel claim may be based on evidence outside the record. (*Id.*, pp. 8-9). Respondent requests that the petition be dismissed, rather than stayed and held in abeyance while petitioner exhausts the state post-conviction remedy, in the absence of a showing that petitioner meets the criteria for a stay of this action. (*Id.*, pp. 9-10).

To date, petitioner has yet to file any pleading responding to respondent's motion to dismiss, which was filed nearly six months ago, on May 27, 2014.

## II. OPINION

The statute governing habeas petitions filed by state prisoners contains an exhaustion requirement. *See* 28 U.S.C. § 2254(b)-(c). Specifically, the statute provides that an application for a writ of habeas corpus by a state prisoner shall not be granted unless the petitioner has exhausted his state court remedies, there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect petitioner's rights. 28 U.S.C.

6

§ 2254(b)(1). A state defendant with federal constitutional claims is required to first fairly present those claims to the state courts for consideration because of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts. *See Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). Under the "fair presentation" requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," which, in Ohio, includes discretionary review by the Ohio Supreme Court. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985).

If the petitioner fails to fairly present his claims through the requisite levels of state appellate review, but still has an avenue open to him in the state courts by which he may present the claims, his petition is subject to dismissal without prejudice for failure to exhaust state remedies. *See* 28 U.S.C. § 2254(c). Although the exhaustion requirement is not jurisdictional, and an application for writ of habeas corpus may be denied on the merits notwithstanding the petitioner's failure to exhaust, *see* 28 U.S.C. § 2254(b)(2), there is a strong presumption in favor of requiring the exhaustion of state remedies. *See Granberry v. Greer,* 481 U.S. 129, 131 (1987). A "mixed" petition containing both unexhausted claims and claims that have been fairly presented to the state courts is subject to dismissal without prejudice on exhaustion grounds. *Rose v. Lundy,* 455 U.S. 509, 510, 522 (1982).

Since the enactment in 1996 of the Antiterrorism and Effective Death Penalty Act (AEDPA), which "preserved *Lundy*'s total exhaustion requirement," but also imposed a one-year statute of limitations on the filing of federal habeas petitions, *Rhines v. Weber,* 544 U.S. 269, 275

7

(2005), some federal courts (including the Sixth Circuit) have adopted a "stay-and-abeyance" procedure to ensure habeas review is not precluded in the class of cases where a timely-filed federal habeas petition is dismissed on exhaustion grounds and petitioner subsequently returns to federal court to present his claims in a renewed petition after exhausting his state remedies only to find that his claims are barred from review by the applicable one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1). *See, e.g., Griffin v. Rogers,* 308 F.3d 647, 652 & n.1 (6th Cir. 2002); *Palmer v. Carlton,* 276 F.3d 777, 778-81 (6th Cir. 2002).

In *Rhines,* 544 U.S. at 276, the Supreme Court affirmed that district courts have the discretion to issue stays in habeas cases, but that such discretion is circumscribed to the extent it must "be compatible with AEDPA's purposes." The Court pointed out that one of the AEDPA's purposes is to "reduce delays in the execution of state and federal criminal sentences" based on the "well-recognized interest in the finality of state judgments." *Id.* (quoting *Woodford v. Garceau,* 538 U.S. 202, 206 (2003), and *Duncan v. Walker,* 533 U.S. 167, 179 (2001)). In addition, the AEDPA's statute of limitations tolling provision was intended to "reinforce[] the importance of *Lundy*'s "simple and clear instruction to potential litigants: before you bring any claims in federal court, be sure that you first have taken each one to state court." *Id.* at 276-77 (quoting *Lundy,* 455 U.S. at 520).

The Court went on to determine that:

Stay and abeyance, if employed too frequently, has the potential to undermine these twin purposes. Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition. . . .

For these reasons, stay and abeyance should be available only in limited circumstances.

8

*Id.* at 277.

The Court held that stay and abeyance "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court," and that, "even if a petitioner had good cause for that failure," it would be an abuse of discretion for the court to grant a stay where the unexhausted claims "are plainly meritless" or the "petitioner engages in abusive litigation tactics or intentional delay." *Id.* at 277-78. However, on the other hand, "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278.

In the absence of clear guidance from the Supreme Court, the federal courts have differed as to what constitutes "good cause" within the meaning of *Rhines*. *See, e.g., Williams v. Hurley,* No. 2:05cv985, 2006 WL 1650771, at *10-11 (S.D. Ohio June 6, 2006) (Report & Recommendation) (King, M.J.) (discussing the split in authority as to whether the "cause standard of *Rhines* requires a lesser showing than that for procedural default" and whether ineffective assistance of counsel during state post-conviction proceedings may constitute "good cause for failure to exhaust claims in state proceedings"), *adopted,* 2006 WL 1804550 (S.D. Ohio June 28, 2006) (Holschuh, J.); *see also Tolliver v. Sheets,* No. 2:05cv1161, 2007 WL 2462650, at *17-18 (S.D. Ohio Aug. 27, 2007) (Smith, J.; King, M.J.).

In *Pace v. DiGuglielmo,* 544 U.S. 408, 416 (2005), the Supreme Court stated that a "petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file" a petition containing unexhausted claims in the federal court. Some courts have concluded that this statement in *Pace* supports a more expansive

9

definition of good cause. *See, e.g., Tullis v. Kontah,* No. 2:06cv1025, 2007 WL 915197, at *5-6 (S.D. Ohio Mar. 26, 2007) (Graham, J.; King, M.J.) (citing Ninth Circuit decision in *Jackson v. Roe,* 425 F.3d 654, 661-62 (9th Cir. 2005), and *Baker v. Horn,* 383 F.Supp.2d 720, 747 (E.D. Pa. 2005)); *see also Hnatiuk v. Trombley,* No. 06-13880, 2008 WL 3305157, at *4 (E.D. Mich. Aug. 11, 2008) (quoting *Rhines v. Weber,* 408 F.Supp.2d 844, 849 (D.S.D. 2005) (on remand from Supreme Court's decision in *Rhines*)). In *Tullis,* after detailing the "broad and varied" split in authority, the Court concluded with the following quotation from *Riner v. Crawford,* 415 F.Supp.2d 1207, 1209-11 (D. Nev. 2006):

> [T]he discussions by the Pennsylvania court in *Baker* and the Ninth Circuit in *Jackson* support . . . [the] conclusion that the good cause standard applicable in consideration of a request for stay and abeyance of a federal habeas petition requires the petitioner to show that he was prevented from raising the claim, either by his own ignorance or confusion about the law or the status of his case, or by circumstances over which he had little or no control, such as the actions of counsel either in contravention of the petitioner's clearly expressed desire to raise the claim or when petitioner had no knowledge of the claim's existence.

*Tullis, supra,* 2007 WL 915197, at *6.

In this case, petitioner has conceded that he did not exhaust the claims in Grounds Two and Three of the petition because he failed to present them as claims of error in the state appeal proceedings. (*See* Doc. 1, PAGEID #: 12). At this juncture, no remedy remains available in the state courts for petitioner to pursue the claim in Ground Two challenging a bail decision that was rendered by the trial court prior to issuance of the final judgment entry of conviction and sentence. A closer question is presented as to whether a remedy remains available in the state courts for petitioner to exhaust the ineffective-assistance-of-trial-counsel claim alleged in Ground Three.

As respondent has contended in the motion to dismiss (*see* Doc. 13, p. 8), the remedy of a petition for state post-conviction relief pursuant to Ohio Rev. Code § 2953.21 arguably remains

available to the extent that the ineffective-assistance-of-counsel claim may be based on evidence outside the record. As respondent has pointed out, although the deadline has long since passed for filing a timely post-conviction petition with the trial court, *see* Ohio Rev. Code § 2953.21(A)(2), Ohio Rev. Code § 2953.23 provides that the trial court may consider an untimely post-conviction petition if shown that (1) "the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief," or "the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right"; and (2) "clear and convincing evidence" demonstrates that "but for the constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense[s] of which he was convicted."

Here, it is unclear from the face of the petition whether petitioner is even bringing a claim of ineffective assistance that relies on evidence outside the record. Moreover, based on the present record, it is highly likely that petitioner will not be able to satisfy the requirements set forth in Ohio Rev. Code § 2953.23 for obtaining state-court review of any belated post-conviction petition raising his ineffective-assistance-of-trial-counsel claim. However, the undersigned also recognizes that dismissal on exhaustion grounds may be appropriate even in cases where it appears unlikely that the state courts will entertain the petitioner's pleadings. *See Godbolt v. Russell*, 82 F. App'x 447, 449-50 (6th Cir. 2003) (in affirming the district court's decision to dismiss a habeas petition on exhaustion grounds, the Sixth Circuit stated: "No matter how unlikely it seems that [the state post-conviction] petition will fall within the narrow exception contained in [Ohio Rev. Code § 2953.23], it is for the state courts to interpret and enforce their laws on such issues."); *cf. Harris v. Warden, Madison Corr. Inst.*, No. 1:11cv414,

2012 WL 1552757, at *4-5 (S.D. Ohio Apr. 30, 2012) (Litkovitz, M.J.) (Report & Recommendation) (involving the possible remedy of a successive post-conviction petition), *adopted*, 2012 WL 1902435 (S.D. Ohio May 25, 2012) (Barrett, J.). Therefore, out of an abundance of caution, this Court will assume, without deciding, that petitioner's ineffective-assistance-of-counsel claim is based at least in part on evidence outside the record and that, despite the likely futility at this late juncture of his obtaining review of any state post-conviction petition raising such a claim, the trial court should nevertheless be provided "with the opportunity to exercise its discretion in favor of the availability of the remedy." *See Johnson v. Warden, Lebanon Corr. Inst.*, No. 1:09cv336, 2010 WL 2889056, at *10 (S.D. Ohio June 23, 2010) (Wehrman, M.J.) (Report & Recommendation) (citing *Sampson v. Love*, 782 F.2d 53, 58 (6th Cir. 1986)), *adopted*, 2010 WL 2889057 (S.D. Ohio July 20, 2010) (Beckwith, J.).

The inquiry does not end here, however. The Court must also determine whether a stay of this action or a dismissal of petitioner's "mixed" petition is appropriate at this juncture.

Petitioner has not made the requisite showing under *Rhines* to warrant a stay of the instant action. Petitioner alleges in Ground Three that his trial counsel was ineffective for failing (1) to file a motion for appointment of a medical expert regarding his medical condition; (2) to inform him of the extensive publicity surrounding the case and of the "negative impact" such publicity and statements made by the victim's family would have on the trial court in determining his sentence; and (3) to provide "adequate legal advice" regarding the terms of the plea agreement. (Doc. 1, PAGEID #: 16). Petitioner's conclusory allegations are insufficient to suggest his ineffective-assistance-of-counsel claim is potentially meritorious. *See Rhines*, 544 U.S. at 277. In addition, the present record does not support a finding of good cause for petitioner's failure to exhaust the arguably available state post-conviction remedy prior to filing

the instant habeas corpus action. Although petitioner's allegations of ineffectiveness are based on facts that were discoverable in the exercise of due diligence at the time of his prosecution, conviction and sentence in the fall of 2011, petitioner has yet to present any of those allegations to the state courts for consideration.

Although a stay of the instant action is not warranted, this Court also has serious concerns that, at this time, the dismissal without prejudice of the instant timely-filed "mixed" petition may result in a statute-of-limitations bar to review of any subsequent petition filed by petitioner after he exhausts the state post-conviction remedy. The Court is especially concerned given that it is unclear from the present record whether petitioner is bringing a claim based on evidence outside the record that can be entertained in a state post-conviction proceeding, and given that it is highly likely that petitioner's pursuit of state post-conviction relief will prove futile at this late juncture. In such circumstances, where the dismissal of the entire petition might unreasonably impair the petitioner's right to obtain federal review of any of his other grounds for habeas relief, the Court must allow petitioner the opportunity to inform the Court whether the unexhausted claim alleged in Ground Three is based on evidence outside the record and thus can be pursued further in the state courts, and if so, whether he wishes to withdraw that ground for relief and proceed to judgment on the remaining claims for relief alleged in the petition that pose no exhaustion concerns. *See Rhines,* 544 U.S. at 278.[1]

Accordingly, although a stay is not warranted in this case, the undersigned concludes that respondent's motion to dismiss (Doc. 13) should be **DENIED** subject to reconsideration if petitioner informs the Court in writing **within thirty (30) days** of the date of filing of this Report and Recommendation that the ineffective-assistance-of-counsel claim alleged in Ground Three is

---

[1] Petitioner is cautioned, however, that if he elects to withdraw any such unexhausted claim and proceed to judgment on his other claims alleged herein, he risks forfeiting consideration of the withdrawn claim if he should later raise it in a successive federal habeas petition. *See* 28 U.S.C. § 2244(b).

based on evidence outside the record for purposes of possible state post-conviction review, but does not elect to withdraw that claim in order to proceed to judgment on the remaining grounds for relief alleged in the petition. *Cf. Smith v. Warden, Warren Corr. Inst.,* No. 1:07cv93, 2007 WL 2874885 (S.D. Ohio Sept. 27, 2007) (Barrett, J.; Hogan, M.J.) (adopting the Magistrate Judge's Report and Recommendation to deny the petitioner's motion to stay and to deny the respondent's motion to dismiss to allow the petitioner the opportunity to withdraw his unexhausted claims as an alternative to dismissing the entire petition); *see also Dykens v. Miller,* 379 F.Supp.2d 71, 74 (D. Mass. 2005). Petitioner is hereby warned that if he informs the Court that the ineffective-assistance-of-counsel claim alleged in Ground Three is based on evidence outside the record, but does not withdraw that claim, the instant petition will be subject to dismissal as a "mixed" petition and any subsequent habeas petition may be barred from review by the applicable one-year statute-of-limitations set forth in 28 U.S.C. § 2244(d)(1).

**IT IS THEREFORE RECOMMENDED THAT:**

Respondent's motion to dismiss the "mixed" petition without prejudice on exhaustion grounds (Doc. 13) be **DENIED** subject to reconsideration in the event that petitioner informs the Court in writing **within thirty (30) days** of the date of filing of this Report and Recommendation that the ineffective-assistance-of-counsel claim alleged in Ground Three is based on evidence outside the record and yet does not withdraw that claim in order to proceed to judgment on the remaining grounds for relief alleged in the petition.

Date: 11/12/14

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

STANLEY K. IVEY,
    Petitioner

vs

WARDEN, HOCKING
CORRECTIONAL FACILITY,
    Respondent

Case No. 1:13-cv-914

Black, J.
Litkovitz, M.J.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☑ Agent ☐ Addressee<br>B. Received by (Printed Name)　C. Date of Delivery |
| 1. Article Addressed to:<br><br>Stanley K. Ivey #655211<br>Hocking Corr. Facility<br>P O Box 59<br>Nelsonville, OH 45764 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☑ Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee) ☐ Yes |
| 2. Article Number<br>(Transfer from service label) | 7011 3500 0001 5345 6229 |

PS Form 3811, February 2004　　Domestic Return Receipt　　102595-02-M-1540